


**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

**ENTERED**
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

_____
**United States Bankruptcy Judge**

**Signed June 10, 2010**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 7 |
| Sherry Ramon and Gilbert Ramon, | § § § | |
| Debtors. | § § | Case No. 09-44325 (DML) |
| Rosemary V. Chizk, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Adv. No. 09-04281 (DML) |
| Sherry Ramon and Gilbert Ramon, | § § § | |
| Defendants. | § § | |

### Memorandum Opinion

The above-styled adversary proceeding was tried to the court on April 14, 2010. During trial the court received testimony from Sherry Ramon, Gilbert Ramon (with Ms. Ramon, "Defendants"), and Rosemary Chizk ("Plaintiff"). The court also received into evidence a recording of Defendants' meeting of creditors conducted pursuant to section 341 of the Bankruptcy Code (the "Code").[1] Defendants and Plaintiff offered numerous exhibits into evidence, which are referred to below as necessary.

The court exercises core jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a) and 157(b)(2)(I). This memorandum opinion embodies the court's findings of fact and conclusions of law. Fed. R. Bankr. P. 7052.

## I. Background

On January 22, 2004, Ms. Ramon and Plaintiff formed Parvenu, LLC ("Parvenu")[2] in order to open a gas station and convenience store located at 3320 25th Avenue, Gulfport, Mississippi (the "Gas Station"). Plaintiff advanced to Ms. Ramon $35,000 in order to fund acquisition and operation of the Gas Station. After several months of operation, Defendants closed the Gas Station in June of 2004.

---

[1] 11 U.S.C. §§ 101 *et seq*

[2] The business services website of the Mississippi Secretary of State (accessible at: https://business.sos.state.ms.us/corp/soskb/csearch.asp) contains public records of LLCs formed in Mississippi. The date of formation was obtained from those public records.

Plaintiff's exhibit L lists Sherry Ramon, Gilbert Ramon, and Max Chizk as officers of Parvenu. However, the Mississippi Secretary of State's website currently (as of May 19, 2009) lists only Plaintiff and Ms. Ramon as officers of Parvenu.

Plaintiff's exhibit G appears to be one of the pages of the formation document of Parvenu. It is, however, incomplete and does not actually have Parvenu's name anywhere on it. Exhibit G lists Ms. Ramon as "President" and Plaintiff as "V. Pres." Because the document is incomplete it is possible that other people may have been listed on other pages.

At some time after the Gas Station was closed, but before October 20, 2004, Plaintiff filed suit against Defendants as well as Max Chizk and Patricia Runnels[3] in the Chancery Court of Harrison County, Mississippi (the "State Court"). On October 20, 2004, the State Court held a hearing during which Plaintiff requested that Defendants provide an accounting of what happened to the inventory that remained at the Gas Station when it was closed. The State Court ordered that Defendants, Max Chizk, and Patrica Runnels undertake an accounting.

Following dismissal of the suit as to Mr. Chizk and Ms. Runnels, on February 6, 2007, Plaintiff obtained a default judgment (the "State Court Judgment") against Defendants. The State Court Judgment awards Plaintiff $60,000 plus interest at 8% per annum from the date it was signed.[4]

Defendants filed for relief under chapter 7 of the Code on July 16, 2009. On August 11, 2009, Plaintiff, acting *pro se*, filed her original complaint by which she asked the court to deny Defendants' discharge pursuant to Code § 727. Plaintiff subsequently amended her complaint twice, each time either further specifying claims already made or adding causes of action. The complaint now before the court is Plaintiff's *Second Amended Complaint* (the "Complaint").

Defendants next moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 9 (applicable by reason of Fed. R. Bankr. P. 7009). On February 3, 2010, the court issued a memorandum order (the "Prior Order")[5] in which it dismissed a cause of action asserted in

---

[3] It is unclear from the record on what theories Plaintiff sued Mr. Chizk and Ms. Runnels. Mr. Chizk is Plaintiff's and Ms. Ramon's brother, and Ms. Runnels acted as Parvenu's accountant.

[4] The State Court Judgment awarded Plaintiff $45,000 in damages and $15,000 in attorneys' fees.

[5] *Chizk v. Ramon (In re Ramon)*, 2010 Bankr. LEXIS 239 (Bankr. N.D. Tex. Feb. 3, 2010).

the Complaint based on Defendants' fraud while acting in a fiduciary capacity. The court ordered that Plaintiff's false pretenses, false representations, actual fraud, embezzlement, larceny, and Code § 727(a)(2)(A), (3), and (4)(A) causes of action be set for trial. The court considers only those causes of action in this memorandum opinion.

## II. Discussion

It is well established that the burden of proof a creditor must meet for denial to a debtor of discharge or for a debt to be found nondischargeable is the standard civil burden of showing entitlement to relief by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 287 (1991). A fact is proven by a preponderance of the evidence if the finder of fact – here the court – finds it more likely than not, based on the evidence, that the fact is true. *See, e.g., In re Bell Petroleum Servs., Inc.*, 3 F.3d 889, 909-10 (5th Cir. 1993) (Parker, District Judge, sitting by designation, concurring in part and dissenting in part). "The exceptions [to discharge] are construed strictly against the creditor and liberally in favor of the debtor." *Laughlin v. Nouveau Body & Tan, L.L.C. (In re Laughlin)*, 602 F.3d 417, 421 (5th Cir. 2010) (alterations in original) (quoting *Cadle Co. v. Duncan (In re Duncan)*, 562 F.3d 688, 695 (5th Cir. 2009)).

In the case at bar, the court finds Plaintiff's testimony no more credible than Defendants'. Thus, in order for Plaintiff to prevail she must have presented evidence at trial, other than her own testimony, that tends to show that her version of the facts is true. Where two parties present equally credible, but contradictory, evidence, the party bearing the burden of proof has not met his or her burden. *See Smith v. United States*, 726 F.2d

428 (8th Cir. 1984).

**A. Code § 727 Causes of Action**

Plaintiff challenges Defendants' discharge under Code § 727(a)(2)(A), (3), and (4)(A). Denial of a debtor's discharge pursuant to section 727 results in the debtor remaining liable to all creditors despite the debtor's bankruptcy.

**1. Section 727(a)(2)(A)**

Section 727(a)(2)(A) provides:

(a) The court shall grant the debtor a discharge, unless–

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed–

(A) property of the debtor, within one year before the date of the filing of the petition…

The elements that must be shown by a plaintiff asking the court to deny a debtor's discharge under Code § 727(a)(2)(A) are that a debtor made: "(1) a transfer [or concealment] of property; (2) belonging to the debtor; (3) within one year of the filing of the petition; [and] (4) with intent to hinder, delay, or defraud a creditor or officer of the estate." *Laughlin*, 602 F.3d at 421 (alterations in original) (quoting *Cadle Co. v. Pratt (In re Pratt)*, 411 F.3d 561, 565 (5th Cir. 2005)).

It is unclear to the court which of Defendants' property Plaintiff alleges was improperly transferred or concealed. In so far as she may be complaining that the

Defendants concealed or transferred inventory of the Gas Station, Plaintiff has not met the second or third elements required under section 727(a)(2)(A). The inventory of the Gas Station was not the Defendants' property; it was Parvenu's property. Further, Plaintiff has not proven that the inventory was transferred or concealed within the year prior to Defendants' bankruptcy.[6] If Plaintiff is basing her claim on Defendants' alleged failure to turn over books and records of Parvenu to the chapter 7 trustee, Plaintiff has not met the second or fourth elements. Those books and records were not property of the Defendants; they were property of Parvenu. Further, Defendants testified credibly at trial that they could not turn over those records because they no longer possessed them.

### 2. Section 727(a)(3)

Section 727(a)(3) provides, in relevant part, that the court shall grant a debtor a discharge unless:

> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case…

The two elements that a plaintiff must establish in order for the court to deny a debtor his or her discharge under Code § 727(a)(3) are: "(1) that the debtor failed to keep or preserve books or records; and (2) that such failure makes it impossible to ascertain the debtor's financial condition." *Pher Partners v. Womble (In re Womble)*, 289 B.R. 836, 856

---

[6] This is not to say that *no* inventory was *ever* improperly transferred or concealed. However, if any such transfers occurred, they would have been of Parvenu's property and would have occurred in 2004, more than one year prior to Defendants' bankruptcy filing.

(Bankr. N.D. Tex. 2003). A "debtor's financial records need not contain 'full detail,' but 'there should be written evidence' of the debtor's financial condition." *Robertson v. Dennis (In re Dennis)*, 330 F.3d 696, 703 (5th Cir. 2003) (quoting *Goff v. Russell Co. (In re Goff)*, 495 F.2d 199, 201 (5th Cir. 1974)).

Plaintiff alleges that Defendants failed to preserve financial records related to Parvenu and that the tax records they provided to the chapter 7 trustee were incomplete because they were short forms rather than long forms. As to the first of these, Parvenu's financial records, not only are the records not Defendants', but, assuming they would nevertheless be relevant to Defendants' financial condition, Plaintiff has not proven the second element – that Defendants' failure to maintain such records made it impossible to ascertain their (as opposed to Parvenu's) financial condition. As to the tax records, Plaintiff has failed to prove either element. Defendants provided a short form to the chapter 7 trustee and the trustee had no objection to the short form. Though the short form tax records provided to the trustee did not contain "full detail," they did constitute "written evidence of [Defendants'] financial condition." Further, as to both claims, the chapter 7 trustee was satisfied with the records provided to her and was able to sufficiently determine Defendants' financial condition with the records supplied to her.[7]

### 3. Section 727(a)(4)(A)

Section 727(a)(4)(A) provides that a court shall grant a debtor a discharge unless:

(4) the debtor knowingly and fraudulently, in or in connection with the case–

---

[7] Presumably, had the trustee considered Defendants deficient in complying with section 727(a)(3), she would have joined Plaintiff's objection to Defendants' discharge. Code § 704(a)(6).

(A) made a false oath or account…

In order for a court to deny a debtor his or her discharge pursuant to section 727(a)(4)(A), a plaintiff must show that: "(1) the debtor made a false statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement was material to the bankruptcy case." *Sholdra v. Chilmark Fin. LLP (In re Sholdra)*, 249 F.3d 380, 382 (5th Cir. 2001); *see also United States Trustee v. Moschella (In re Moschella)*, 2004 Bankr. LEXIS 1108, *2 (Bankr. N.D. Tex. Aug. 9, 2004).

Plaintiff asserts that Defendants made false statements under oath because of mistakes on their schedules. It is clear that a false statement in a debtor's schedules satisfies at least the first and second elements. See *Soldra*, 249 F.3d at 382.

Defendants admitted in their answer that they did not list assets with a value of less than $100 in their schedules, but they asserted the omission was inadvertent and they have since amended their schedules to reflect those assets.[8] However, Plaintiff failed to prove that the single, minor mistake on Defendants' schedules was made with fraudulent intent, or that it was material.

This court, following *Cadle Co. v. Mitchell (In re Mitchell)*, 102 Fed. Appx. 860 (5th Cir. 2004), held in *Moschella* that a debtor's failure to properly complete his or her schedules can, if there are enough omissions, amount to a reckless disregard for the truth, and that such a reckless disregard to the truth amounts to fraudulent intent. *Moschella*,

---

[8] Amending schedules following a creditor's identification of an omission is not necessarily sufficient to provide a defense to an action under section 727(a)(4)(A). *See Sholdra v. Chilmark Fin. LLP (In re Sholdra)*, 249 F.3d 380 (5th Cir. 2001).

2004 Bankr. LEXIS 1108 at *7 - 8.[9] In *Moschella* there were 16 mistakes on the debtor's schedules, including omissions of various assets. In the case at bar, the single mistake on Defendants' schedules, a failure to list assets with a value of less than $100, is far less egregious than the numerous mistakes and omissions made in *Moschella*; standing alone, that one mistake does not amount to a reckless disregard for the truth. Therefore, the court will not find a reckless disregard for the truth by Defendants in the case at bar.

### 4. Disposition of Section 727 Causes of Action

As reflected above, Plaintiff has not met her burden of proof respecting Defendants' entitlement generally to a discharge, and judgment should be rendered accordingly. The clerk of the court, pursuant to such judgment, shall be directed to enter an order discharging Defendants of their debts.

### B. Code § 523 Causes of Action

As an alternative to a general denial of discharge, the Code provides that certain debts may be excepted from discharge. While some debts are excepted from discharge whether or not that exception is sought in the bankruptcy court, many exceptions must be raised by complaint prior to the debtor's discharge. *See* Code § 523(c).

Plaintiff seeks to have Defendants' debt to her declared as nondischargeable pursuant to Code § 523(a)(2)(A) and (4), both of which provisions fall into the second

---

[9] In *Mitchell*, the Court of Appeals concluded that six mistakes in the debtors' schedules evidenced a sufficiently reckless disregard for the truth to warrant denial of discharge under Code § 727(a)(4)(A). While it is not clear that that many errors is necessary to support such a finding, it seems certain that more than one error – *i.e.* a pattern – is the minimal requirement.

category. Plaintiff is limited in her section 523(a)(4) cause of action to embezzlement and larceny.[10] Judgment in favor of a creditor pursuant to section 523 will only except from discharge a specific debt of the kind described in Code § 523(a).

### 1. Section 523(a)(2)(A)

Code § 523(a)(2)(A) provides that debts incurred through "false pretenses, a false representation, or actual fraud" are subject to exception from a debtor's discharge. In order for a debt to fall within Code § 523(a)(2)(A), the debtor's fraud or false representation must involve the debtor's "moral turpitude or intentional wrong." *Barcelona v. Vizzini (In re Vizzini)*, 348 B.R. 339, 343 (Bankr. E.D. La. 2005), *aff'd*, 234 Fed. Appx. 234 (5th Cir. 2007) (quoting *In re Chavez*, 140 B.R. 413, 419 (Bankr. W.D. Tex. 1992)). Fraudulent acts which are implied in law and may exist in the absence of bad faith are insufficient to deny discharge. *Id.* The Court of Appeals for the Fifth Circuit has distinguished between the elements of claims seeking denial of discharge for (1) false pretenses and representations and (2) actual fraud. *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1292 (5th Cir. 1995).

#### a. False Pretenses and Representations

In order for the court to deny discharge of a debt under section 523(a)(2)(A) on the basis that the debt is attributable to the debtor's false pretenses or representations, the complaining creditor must prove the debtor's representations were "(1) knowing and

---

[10] In the Prior Order, the court dismissed Plaintiff's fraud or defalcation as a fiduciary claim because it was not properly pleaded.

fraudulent falsehoods, (2) describing past or current facts, (3) that were relied upon by the other party." *Allison v. Roberts (In re Allison)*, 960 F.2d 481, 483 (5th Cir. 1992) (later cited in *Pentecost*, 44 F.3d at 1293). Courts have consistently found that a debtor's silence regarding a material fact equates to a material representation sufficient to support a denial of discharge. *See, e.g.*, *AT&T Universal Card Servs. v. Mercer (In re Mercer)*, 246 F.3d 391, 403 (5th Cir. 2001); *Caspers v. Van Horne (In re Van Horne)*, 823 F.2d 1285, 1288 (8th Cir. 1987); *Hughes v. Wells (In re Wells)*, 2006 Bankr. LEXIS 330, *54 (Bankr. N.D. Tex. Mar. 8, 2006); *Gen. Elec. Capital Corp. v. Acosta (In re Acosta)*, 2003 U.S. Dist. LEXIS 23450, *52-53 (E.D. La. Dec. 30, 2003).

In the case at bar, Plaintiff claims that she loaned Defendants money to buy the Gas Station on the basis of their promise to pay her back, should it fail, via Mr. Ramon's retirement plan (the "401(k) Plan" [11]). Defendants did not pay Plaintiff back after the Gas Station failed. Plaintiff argues that the State Court Judgment should be nondischargeable because Defendants never intended to repay her from the 401(k) Plan, or, alternatively, that Defendants never had a retirement plan qualified under 26 U.S.C. § 401(k) from which they could repay her.

As to the first of Plaintiff's false pretenses claims – that Defendants never intended to pay her from the 401(k) Plan – she has failed to prove, by a preponderance of the

---

[11] For the purpose of this memorandum opinion, the court will refer to Mr. Ramon's retirement plan as the "401(k) Plan." The court uses this term for the sake of consistency with Mr. Ramon's trial testimony. However, as discussed below, the court makes no finding as to whether Mr. Ramon's retirement plan is one that actually qualifies under 26 U.S.C. § 401(k).

There is no dispute that Mr. Ramon has a retirement plan. Plaintiff argues that Defendants, by referring to Mr. Ramon's retirement plan as a "401(k) plan," despite the fact that it may not be qualified under 26 U.S.C. § 401(k), misled her in such a material way that Defendants' debt to her should be held nondischargeable.

evidence, that Defendants ever promised to pay her from the 401(k) Plan. The only evidence that Plaintiff presented respecting Defendants' alleged promise to repay her was her own testimony; she did not present any evidence of either an oral or written contract. Mr. Ramon, who actually owns the 401(k) Plan (*see* Defendants' exhibit 2), testified during both the trial and his meeting of creditors under Code § 341 that he never promised to repay Plaintiff from the 401(k) Plan. Ms. Ramon also testified that she never promised to repay Plaintiff from the 401(k) Plan.[12] Plaintiff must prove her case by a preponderance of the evidence – this means she must prove that it is more likely than not that her version of the facts is true. *See Bell*, 3 F.3d at 909-10. Plaintiff failed to so prove that Defendants promised to repay her from the 401(k) Plan.[13]

Plaintiff has also failed to prove all of the elements of her second claim – that Defendants did not have a 401(k) plan from which they could repay her. Assuming, *arguendo*, that Defendants did promise to repay Plaintiff from the 401(k) Plan, the fact that what Defendants refer to as the 401(k) Plan may not be a retirement savings plan qualified under 26 U.S.C § 401(k) is irrelevant. Plaintiff must prove that Defendants misrepresentations constituted "knowing and fraudulent falsehoods." *Allison*, 960 F.2d at 483.

Plaintiff claims that Mr. Ramon's retirement plan is not actually qualified as a 401(k) plan and, therefore, Defendants made a misrepresentation by promising to repay

---

[12] The court finds that neither of Defendants ever promised to repay Plaintiff from the 401(k) Plan, but even if Ms. Ramon had promised to repay Plaintiff from the 401(k) Plan, she could not have accessed it because it is registered solely to Mr. Ramon.

[13] In addition, a promise to do something in the future is not a statement describing past or current facts. *Bank of La. v. Bercier (In re Bercier)*, 934 F.2d 689 (5th Cir. 1991).

her from a 401(k) plan. There is no evidence before the court that Defendants' retirement account is not, in fact, a retirement savings plan qualified under 26 U.S.C. § 401(k). Even if such evidence were before the court, Defendants' alleged misrepresentation was not "knowing" because Mr. Ramon testified that he thought his retirement account was a 401(k) plan, and he referred to it as such throughout the trial. Plaintiff has therefore failed to prove that Defendants' alleged misrepresentation respecting the 401(k) Plan was "knowing." Further, the term "401(k) plan" has become a generic term for tax exempt retirement plans – much as "Frigidaire" and "Kleenex" are commonly used to describe products manufactured by entities that do not own the trademark. Reference to Mr. Ramon's retirement plan as a "401(k) plan" is thus only questionably incorrect. Finally, there is no evidence before the court that the 401(k) Plan is not tax-exempt; indeed, that the trustee has not sought to liquidate it for the benefit of creditors suggests that she has concluded it is a qualified plan. Thus, distinguishing it from a plan established under 26 U.S.C. § 401(k) is a distinction without (for purposes of the case before the court) a difference.

### b. Fraud

The elements that must be proven to deny discharge of a debt for actual fraud pursuant to section 523(a)(2)(A) are: "(1) the debtor made representations; (2) at the time they were made the debtor knew they were false; (3) the debtor made the representations with the intention and purpose to deceive the creditor; (4) that the creditor relied on such representations; and (5) that the creditor sustained losses as a proximate result of the

representations." *Pentecost*, 44 F.3d at 1293 (quoting *Bank of La. v. Bercier (In re Bercier)*, 934 F.2d 689, 692 (5th Cir. 1991) (internal footnote omitted)).

Plaintiff claims that Defendants' debt to her should be nondischargeable as actual fraud for the same reasons she claims the debt should be nondischargeable as false pretenses and representations – Defendants promised to repay her from the 401(k) Plan, but never intended to do so, and because Defendants did not have a retirement account qualified under 26 U.S.C. § 401(k) from which they could repay her despite their promise.

Plaintiff failed to prove her first actual fraud claim – that Defendants promised to repay her, but never intended to do so. The first element that must be proven to sustain an actual fraud claim is the debtor actually made a representation. As stated above, Plaintiff failed to prove that Defendants promised to repay her from the 401(k) Plan.

Plaintiff also failed to prove all of the elements of her second fraud claim – that Defendants' did not have a retirement account qualified under 26 U.S.C § 401(k) from which they could repay her. As stated above, this claim fails because Plaintiff failed to prove that Defendants ever promised to repay her, but, even if they had promised to repay her from the 401(k) Plan, the fact that Defendants' retirement account may or may not be qualified under 26 US.C. § 401(k) is irrelevant for the reasons discussed above.

**2. Section 523(a)(4)**

Code § 523(a)(4) provides that a debt may be declared nondischargeable if it arose by reason of the debtor's "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." The phrase "fiduciary capacity" only modifies fraud and

defalcation; therefore, a debt may be held nondischargeable for embezzlement or larceny if the debtor was not a fiduciary. *Miller v. J.D. Abrams Inc. (In re Miller)*, 156 F.3d 598, 602 (5th Cir. 1998); 4 Collier On Bankruptcy ¶ 523.10[1][d] (16th ed. 2009).

For purposes of section 523(a)(4), "embezzlement" is defined as the "fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." *Miller*, 156 F.3d at 602 (quoting *Greyhound Lines, Inc. v. Thurston (In re Thurston)*, 18 B.R. 545, 550 (Bankr. M.D. Ga. 1982)). In order for a debt to be deemed nondischargeable as arising through embezzlement under section 523(a)(4) the evidence must show "that the creditor entrusted the debtor with his property, that the debtor misappropriated the property, and that the debtor intended to defraud the creditor." *E.E. Norwood & Flat Top Dairy Go Round, LP v. Hicks (In re Hicks)*, 384 B.R. 443, 451 (Bankr. N.D. Tex. 2008) (citing *Miller*, 156 F.3d at 603). "Fraudulent intent may be inferred from the conduct of the Debtor and from circumstances of the situation." *Winn v. Holdaway (In re Holdaway)*, 388 B.R. 767, 779 (Bankr. S.D. Tex. 2008) (quoting *In re Harrell,* 94 B.R. 86, 91 (Bankr. W.D. Tex. 1988)).

Larceny is defined as the "felonious taking of another's personal property with intent to convert it or deprive the owner of same." 4 Collier on Bankruptcy ¶ 523.10[2] (16th ed. 2009). The difference between larceny and embezzlement is that, for embezzlement to apply, the debtor must have been entrusted with the creditor's property, while for larceny to apply the debtor must have unlawfully taken the creditor's property at the outset. *See* 4 Collier on Bankruptcy ¶ 523.10[2] (16th ed. 2009).

In the case at bar, Plaintiff claims that Defendants misappropriated inventory from

the Gas Station just before it closed. Larceny is not an appropriate cause of action in this case because Defendants were in control of the Gas Station's inventory at the time it was allegedly misappropriated. Plaintiff, therefore, must rely on her embezzlement claim.

Plaintiff has failed to prove that Defendants embezzled the Gas Station's inventory. The only evidence that Plaintiff presented respecting Defendants' alleged embezzlement is her own testimony.[14] Defendants testified that there was no inventory remaining at the Gas Station when it closed and that they did not remove any inventory from the Gas Station. Plaintiff failed to present any evidence, other than her own testimony, to contradict Defendants' testimony. As Plaintiff had no personal knowledge (not having been there[15]) on the basis of which she could contradict Defendants' testimony, she has failed to prove, by a preponderance of the evidence, that Defendants misappropriated property.[16]

### C. Preclusive Effect of the State Court Judgment

The deficiencies in Plaintiff's evidence, however, are subject to cure to the extent the State Court Judgment has preclusive effect. Plaintiff has relied heavily on the State Court Judgment, insisting that this court is bound to deny Defendants' discharge based

---

[14] Plaintiff also presented a transcript from the State Court in which she claims that Defendants stole inventory from the Gas Station. The State Court ordered that Defendants undertake an accounting of the inventory that remained at the Gas Station upon its closure, but this accounting is not in the court's record.

[15] The evidence before the court is that Plaintiff was not in Mississippi at the time the Gas Station closed. She thus could not have personal knowledge of what inventory was in the Gas Station or what happened to it at the time of closing.

[16] The court notes that, as the inventory belonged to Parvenu, not Plaintiff, it is questionable whether she is the proper party to complain of any embezzlement of inventory.

upon it.[17] However, the Court of Appeals for the Fifth Circuit has provided lower courts with a good deal of guidance respecting the effect to be given a pre-bankruptcy judgment such as the State Court Judgment. If, within the parameters set by that Court, the State Court Judgment satisfies unproven elements of any of the causes of action asserted in the Complaint, Plaintiff should prevail on those claims.

While the doctrine of *res judicata* does not apply to dispose of claims of nondischargeability (*see, e.g. Fielder v. King (In re King)*, 103 F.3d 17, 19 (5th Cir. 1997)), a bankruptcy court may apply collateral estoppel in dischargeability actions to prevent relitigation of state court findings. The ultimate determination of the dischargeability of debts, though, is a federal question. *Gupta v. E. Idaho Tumor Institute, Inc. (In re Gupta)*, 394 F.3d 347, 349-50 (5th Cir. 2004).

In applying the doctrine of collateral estoppel, federal court must give a state court judgment the same preclusive effect that it would have under that state's law. *See, e.g., Shimon v. Sewerage & Water Bd. of New Orleans*, 565 F.3d 195, 199 (5th Cir. 2009). Collateral estoppel "precludes parties from relitigating issues authoritatively decided on their merits in prior litigation to which they were parties or in privity." *State ex rel. Moore v. Molpus*, 578 So. 2d 624, 640 (Miss. 1991). In Mississippi, a party will be barred by collateral estoppel from relitigating an issue only if the issue was "actually litigated in the former action; determined by the former action; and, essential to the judgment in the

---

[17] The court several times attempted to explain to Plaintiff that, while the State Court Judgment clearly liquidated Defendants' debt to her, it did not dispose of the issues raised in the Complaint. Indeed, in the Prior Order, the court noted (*Ramon*, 2010 Bankr. LEXIS 239 at *3, n. 2) that "[w]hile the court accepts the State Court judgment as true for purposes of the [Defendants' motion to dismiss], the court reaches no conclusion as to its preclusive effect at this time." The court went on to cite for the parties some of the controlling precedent respecting the effect of prior judgments on discharge litigation.

former action." *American Casualty Co. v. United Southern Bank*, 950 F.2d 250, 253 (5th Cir. 1992).

Collateral estoppel, for the purpose of nondischargeability, applies in bankruptcy court only if "the first court has made specific, subordinate, factual findings on the identical dischargeability issue in question – that is, an issue which encompasses the same *prima facie* elements as the bankruptcy issue – and the facts supporting the court's findings are discernible from that court's record." *Dennis v. Dennis (In re Dennis)*, 25 F.3d 274, 278 (5th Cir. 1994); *see also Garner v. Lehrer (In re Garner)*, 56 F.3d 677, 680 (5th Cir. 1995) (holding that a post-answer default judgment was afforded the effect of collateral estoppel because the default judgment was entered "after Garner answered Lehrer's complaint and after a trial in which Lehrer put on evidence sufficient to carry his burden of proof") *abrogated on other grounds by In re Caton*, 157 F.3d 1026, 1030 n.18 (5th Cir. 1998). While the facts supporting the first court's findings must be discernible from that court's record, it is not necessary for litigants to present the prior court's entire trial record, including transcripts. *Sheerin v. Davis (In re Davis)*, 3 F.3d 113, 115 (5th Cir. 1993). However, enough of the prior court's record must be presented to the bankruptcy court for it to make a determination that a trial or hearing was conducted at which the plaintiff met his or her burden of proof. *Pancake v. Reliance Ins. Co. (In re Pancake)*, 1997 U.S. App. LEXIS 12991, *4-5 (5th Cir. Mar. 12, 1997). The mere assertion, in a judgment, that "evidence and arguments of counsel" were heard is insufficient to support the application of collateral estoppel to the issues resolved by that judgment. *Id*.

In the case at bar, the court does not find all of the elements of collateral estoppel

to be met. Specifically, the court can not find that the facts stated in the State Court Judgment were actually determined from evidence presented to the State Court. The only evidence regarding whether the facts recited in the State Court Judgment were actually litigated is the recitation at the top of the State Court Judgment that it is based on testimony "adduced in open court." The court has no other evidence before it showing that Plaintiff was put to her burden in the State Court. As the Court of Appeals for the Fifth Circuit opined in *Pancake*, the mere assertion that a judgment is based on evidence and argument is insufficient[18] to support the application of the doctrine of collateral estoppel.[19]

### III. Conclusion

For the reasons stated above, Defendants are entitled to their discharge and the court will not deny it. Plaintiff failed to prove any of her causes of action by a preponderance of the evidence and the court is not required to give preclusive effect to the State Court Judgment. The court will, therefore, not hold Defendants' debt to Plaintiff nondischargeable. The parties will bear their own costs.

Counsel for Defendants is instructed to submit a judgment reflecting the rulings encompassed in this memorandum opinion within 20 days.

---

[18] The court might have reviewed the record of the State Court online, but the State Court's records are not available online.

[19] The court does not have full confidence that the State Court Judgment was entered only after proof of Plaintiff's case. There is at least one unquestionably erroneous finding of fact in the State Court Judgment: the State Court found that Parvenu was formed on February 2, 2004, a finding that is simply incorrect. As stated above, the public records regarding Parvenu are available on the Mississippi Secretary of State website. Those records reflect that Parvenu was formed on January 22, 2004.

#### END OF MEMORANDUM OPINION ####